UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SONDRA J ALLPHIN,<br><br>Plaintiff,<br><br>v.<br><br>PETER K FITNESS, LLC, et al.,<br><br>Defendants. | Case No.  13-cv-01338-BLF<br><br>**ORDER DENYING DEFENDANT FULCO FULFILLMENT INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re:  ECF No. 90] |

Defendant Fulco Fulfillment, Inc. ("Fulco" or "Defendant") brings this Motion for Summary Judgment ("Mot.") against Plaintiff Sondra Allphin ("Allphin" or "Plaintiff"), pursuant to Federal Rule of Civil Procedure 56. Allphin has brought a claim for strict products liability against Fulco and other Defendants due to injuries suffered from an allegedly defective fitness band. Fulco seeks summary judgment, arguing that it was merely a "passive conduit" in the distribution of the allegedly defective band, providing only "storage and shipping services," and as such cannot be held liable to Plaintiff for her injuries under a theory of strict liability. (ECF 90 at 2)

Having reviewed the submissions and oral argument of the parties, as well as governing case law, the Court finds that there is a disputed issue of material fact as to whether or not Fulco is properly considered a part of the vertical distribution chain that supplied, distributed, and marketed the fitness band in question. As such, the Court DENIES the Motion for Summary Judgment.

## I.      BACKGROUND

### A.      Procedural History

On February 13, 2013, Plaintiff filed a Complaint in the California Superior Court for

Santa Clara County. (ECF 1-1 Exh. A) On March 25, 2013, Defendants Peter K Fitness and Peter Kofitsas removed the action to the U.S. District Court for the Northern District of California. (ECF 1) That same day, Peter K Fitness filed a Crossclaim against Fulco, (ECF 5), which Fulco answered on May 24, 2013. (ECF 23) On December 20, 2013, Fulco filed its own Crossclaim against a number of Defendants, including Peter K Fitness. (ECF 58) Peter K Fitness timely answered on January 13, 2014. (ECF 65)

On May 29, 2014, Fulco filed the instant Motion. (ECF 90) Plaintiff filed her Opposition ("Opp. to Mot.") on June 12, 2014. (ECF 96) That same day, Defendant Peter K Fitness filed a Response ("Fitness Resp."), on the grounds that summary judgment on behalf of Fulco could adversely affect its ability to recover under its Crossclaim. (ECF 102) Fulco filed its Reply on June 19, 2014, (ECF 109), and the Court heard oral argument on July 17, 2014.

**B.    Factual Allegations**

Plaintiff is an individual who resides in Santa Clara County, California. (Compl., ECF 1-1 ¶ 4) Plaintiff alleges that Defendant Fulco is a New Jersey corporation. (Compl. ¶ 7)

On or around April 1, 2012, Plaintiff, then fifty-five years old, alleges that she was injured while using a product called the Peter K Fitness band ("the band"). (Compl. ¶ 4) Plaintiff alleges that she was using the band in the manner intended by Defendants when it "unexpectedly snapped and broke, causing lacerations to her left hand," (*id.*), and brought suit against all Defendants, alleging a single cause of action for strict products liability and seeking general and special damages for her injuries. (Compl. at p. 4) Plaintiff alleges that Fulco was "engaged in the business of selling, supplying, distributing, marketing, and/or advertising the product that caused plaintiff's injuries." (Compl. ¶ 7)

Plaintiff alleges several facts in support of her claim against Fulco. Plaintiff states that Fulco operated as the "distributor of the exercise band," (Opp. to Mot. at 1), and held itself to the public as being a company that both distributed and assembled products. (*Id.* at 1-2) In 2009, Plaintiff alleges, Peter K Fitness began an exclusive distribution arrangement with Fulco for purposes of distributing the Peter K Fitness band. (*Id.* at 2) As a part of this arrangement, Plaintiff alleges, Fulco would initially "assemble and package the kits that contained [the] exercise bands,

United States District Court
Northern District of California

2

along with the instructional DVD and other related materials" that were included in the package. (*Id.*) These bands, Plaintiff alleges, were shipped to Fulco from China, and the bands were in Fulco's possession from the time they were received from China until the time when they were shipped, "either directly to Peter Kofitsas for sale or directly to the consumer." (*Id.*)

Fulco moves for summary judgment, arguing that "there is no factual dispute about what services Fulco provided in relation to the subject product . . . .  Fulco did not play an integral role in the 'producing and marketing enterprise' of the product." (Mot. at 3)

In support of its Motion, Fulco submits evidence to demonstrate the following facts: (1) Plaintiff suffered a physical injury to her left hand on April 1, 2012, while using an exercise band; (2) Plaintiff alleges that Fulco is liable under a theory of strict products liability because it engaged in the business of selling, supplying, distributing, marketing, and/or advertising the exercise band that caused Plaintiff's injuries; (3) Fulco is a third-party logistics company that only provides storage and shipping for the product; and (4) Fulco did not play an integral role in the "producing and marketing enterprise" of the product.

Facts 1 and 2 are undisputed. Facts 3 and 4 are supported *solely* by the Declaration of Anthony Rossi, Fulco's President. (*See* Declaration of Anthony Rossi ("Rossi Decl."), ECF 92)

Plaintiff submits evidence to dispute facts 3 and 4, including Mr. Rossi's deposition testimony, emails between Fulco and Peter K Fitness, Mr. Kofitsas's deposition, and Fulco's website. Plaintiff submits additional evidence to support her contention that Fulco acted as a distributor of the exercise band.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The Court draws all reasonable inferences in favor of the party against whom summary judgment is sought. *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

United States District Court
Northern District of California

1    The moving party "bears the burden of showing there is no material factual dispute." *Hill*

2    *v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010). In order to meet its burden,

3    the moving party must "either produce evidence negating an essential element of the nonmoving

4    party's claim or show that the nonmoving party does not have enough evidence of an essential

5    element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v.*

6    *Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

7    A material fact is one that could affect the outcome of suit under the governing substantive

8    law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a Court to find that a genuine

9    dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for

10   the plaintiffs." *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009). The Court "determines

11   whether the non-moving party's specific facts, coupled with disputed background or contextual

12   facts, are such that a reasonable jury might return a verdict for the non-moving party." *E.piphany,*

13   *Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1250 (N.D. Cal. 2008) (citing *T.W.*

14   *Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987)). If the Court

15   finds that a reasonable jury could find for the non-moving party, summary judgment is

16   inappropriate. *See, e.g.*, *Anderson*, 477 U.S. 242, 248. Conclusory and speculative testimony,

17   however, is insufficient to defeat summary judgment. *See, e.g.*, *Soremekum v. Thrifty Payless ,*

18   *Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-

19   82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes

20   of summary judgment.").

21   **III.    DISCUSSION**

22   **A.    Strict Liability**

23   California has recognized the doctrine of strict liability since the California Supreme Court

24   decided *Greenman v. Yuba Power Products, Inc.* in 1963: "A manufacturer is strictly liable in tort

25   when an article he places on the market, knowing that it is to be used without inspection for

26   defects, proves to have a defect that causes injury to a human being." *Greenman*, 59 Cal. 2d 57, 62

27   (1963). After *Greenman*, courts have expanded the scope of parties that can be held strictly liable

28   when a defective product injures a person. First, in *Vandermark v. Ford Motor Co.*, 61 Cal. 2d

United States District Court
Northern District of California

4

256, 262 (1964), the California Supreme Court extended strict liability to retailers. Thereafter, the California Supreme Court applied strict liability to those involved "in the vertical distribution of consumer goods, including lessors of personal property, developers of mass-produced homes, wholesale and retail distributors, and licensors." *Bay Summit Cmty. Ass'n v. Shell Oil Co. (Bay Summit)*, 51 Cal. App. 4th 762, 773 (1996) (compiling cases) (internal citations omitted). Courts have consistently found that a business can be held strictly liable even when it was not involved in the manufacture or design of a defective product, so long as the business was "responsible for passing the product down the line to the consumer." *Id; see also Edwards v. A.L. Lease & Co.*, 46 Cal. App. 4th 1029, 1033 ("In a product liability action, *every supplier in the stream of commerce or chain of distribution*, from manufacturer to retailer, is potentially liable.") (emphasis added).

### B.    Fulco's Argument

Fulco asks this Court to grant it summary judgment because it should not be found strictly liable for any injury caused by the Peter K Fitness band. It argues that it was "not in the business of selling, supplying, distributing, marketing, and/or advertising the subject product," (Mot. at 2), and should be more properly considered a "passive conduit which only provided storage and shipping services." (*Id.*) Fulco states that it merely acted as a "product distribution facilitator[,] providing a service that consisted of Fulco picking the product to be shipped from its warehouse, preparing it for shipping and then shipping it." (Mot. at 5-6) As such, Fulco argues, it did not play an "integral role in the 'producing and marketing enterprise'" of the product, (Mot. at 6), and should not be held strictly liable for any harm that befell a person as a result of any defective Peter K Fitness bands.

In support of its argument, Fulco relies heavily on two cases, *Bay Summit*, 51 Cal. App. 4th 762 (1996), and *Arriaga v. CitiCapital Commercial Corp.*, 167 Cal. App. 4th 1527 (2008). In *Bay Summit*, the court set forth a three factor test for a plaintiff to hold a defendant strictly liable when the defendant falls *outside* the vertical distribution chain, but is nonetheless involved in the marketing and distribution process of a product:

> (1) [T]he defendant received a direct financial benefit from its activities and from the sale of the product; (2) the defendant's role was integral to the business enterprise such that the defendant's

United States District Court
Northern District of California

1  conduct was a necessary factor in bringing the product to the initial
2  consumer market; and (3) the defendant had control over, or a
   substantial ability to influence, the manufacturing or distribution
   process.

3  *Bay Summit*, 51 Cal. App. 4th 762, 778; *see also Arriaga*, 167 Cal. App. 4th 1527, 1535

4  (describing this as a "stream of commerce or marketing enterprise theory" of strict liability).

5      In *Arriaga*, the Court of Appeal affirmed a trial court's refusal to impose strict liability on

6  CitiCapital, a finance lessor of a product. It found that "strict liability is not imposed even if the

7  defendant is technically a 'link in the chain' in getting the product to the consumer market if the

8  judicially perceived policy considerations [underlying strict liability] are not satisfied." *Arriaga*,

9  167 Cal. App. 4th 1527, 1537. Finding that a finance lessor "does not play an integral role of the

10 producing and marketing enterprise of a product," the Court of Appeal found that the imposition

11 of strict liability on it would not "further the policy considerations underlying the strict products

12 liability doctrine." *Id.* at 1539. Fulco further points to a number of cases in which "more peripheral

13 participant[s]" in the distribution of a product have been found not to be liable under strict

14 liability, (Mot. at 5), including landlords and hotel proprietors, construction subcontractors,

15 licensors of trademarks, and water system engineering firms. (Mot. at 6-7)

16      **C.      Plaintiff's Response**

17      Plaintiff makes two arguments in response to Fulco's Motion. First, she argues that there is

18 a triable issue of material fact as to whether Fulco was "directly involved in the vertical

19 distribution of the defective product." (Opp. to Mot. at 4) Second, she argues that the *Bay Summit*

20 marketing enterprise theory of strict liability is inapplicable in this case, because the *Bay Summit*

21 test applies only to parties that are *outside* the vertical distribution chain, and not those parties that

22 directly distribute a product, which she alleges Fulco does. (Opp. to Mot. at 7)

23      **D.      Analysis**

24      The Court ultimately agrees with Plaintiff, and finds that there is a disputed issue of

25 material fact as to whether Fulco is a part of the vertical distribution chain responsible for getting

26 the Peter K Fitness band from production to the consumer. There is sufficient evidence, including

27 deposition testimony and documents, from which a reasonable trier of fact could determine that

28 Fulco is a distributor of the Peter K Fitness band. If considered a distributor, a trier of fact could

6

United States District Court
Northern District of California

1    hold Fulco strictly liable. *See, e.g.*, *Kaminski v. W. MacArthur Co.*, 175 Cal. App. 3d 445, 455-56

2    (1985) ("In products liability cases, a consumer injured by a defective product may sue *any*

3    *business entity* in the chain of production and marketing, from the original manufacturer down

4    through the distributor and wholesaler to the retailer.") (emphasis added).

5         Fulco submits as affirmative evidence for its argument only a declaration from Anthony

6    Rossi, Fulco's President, in which he describes Fulco's general business structure and business

7    relationship with Peter K Fitness. (Rossi Decl., ECF 92) The declaration states that Fulco is a

8    "third-party logistics company," (Rossi Decl. ¶ 3), which provides Peter K Fitness with

9    "warehousing its materials and 'Pick N Pack Services,' which consists [of] picking the products

10   which Peter K Fitness wants shipped, packaging them and shipping them." (*Id.*) Rossi states that

11   Fulco does not buy or sell the Peter K Fitness band, and also does not inspect the band or have

12   input on its "design, manufacture, marketing, distribution or sale." (*Id.*)

13        Plaintiff, however, points to deposition testimony from Mr. Rossi, as well as Defendant

14   Peter Kofitsas, which she argues fully describes the nature of the relationship between Fulco and

15   Peter K Fitness. Rossi's testimony, for example, states that Fulco received the fitness band, DVD,

16   and a booklet, packaged those items into a container, stored the containers in Fulco's facilities, and

17   shipped the containers to certain locations at the direction of Peter K Fitness. (Declaration of

18   Kirsten Fish ("Fish Decl."), ECF 99 Exh. A at 14:3-14:25) Peter Kofitsas, in his deposition, states

19   that, after the Peter K Fitness bands were manufactured in China, "they were shipped to the U.S.,

20   and as soon as they landed in the U.S., they were directly shipped to Fulco." (Fish Decl., ECF 99

21   Exh. B at 24:7-24:12) After Fulco received the band and booklet, manufactured in China, and the

22   DVD, manufactured in the United States and also shipped to Fulco, (*Id.* at 24:13-24:23), Fulco

23   "would package them and store them. And then when we got an order, they would ship them." (*Id.*

24   at 25:4-25:5 (*see also* 25:11-25:15 (stating that the bands would go from Fulco directly to the

25   recipient)) Finally, Kofitsas states that the distribution agreement, entered into between Fulco and

26   Peter K Fitness, was for Fulco "to store and distribute the exercise band for your company." (*Id.* at

27   147:3-147:7)

28        Plaintiff also submits emails between Peter Kofitsas and an employee of Fulco, Jennie

7

1    Wiggins, in which Kofitsas asks about a shipment of Peter K Fitness bands and Wiggins informs

2    him that Fulco is "in the process of building the kits now" before shipping the order to the

3    customer. (Fish Decl., ECF 99 Exh. E at 1-3)

4         A trier of fact, when presented with this testimony and documentary evidence, could

5    reasonably find that Fulco served as a distributor of the Peter K Fitness bands within the vertical

6    distribution chain. *Cf. Corales v. Bennett*, 567 F.3d 554, 562 (stating that, to defeat summary

7    judgment, "there must be enough doubt for a reasonable trier of fact to find for the plaintiffs").

8    Even *Bay Summit*, on which Defendant relies throughout its briefing, states that a party can be

9    held strictly liable when it operates "in the vertical distribution of consumer goods, including . . .

10   wholesale and retail distributors." *Bay Summit*, 51 Cal. App. 4th 762, 773.

11        Further, Defendant's reliance on the marketing enterprise theory articulated in *Bay Summit*

12   and *Arriaga* is misplaced. These cases articulate an *additional* way a party can be found strictly

13   liable in tort for a defective product. A plaintiff can prove either that a defendant is involved in the

14   vertical chain of distribution of a product, *see, e.g.*, *Bay Summit*, 51 Cal. App. 4th 762, 773, *or* that

15   a party is outside the vertical chain of distribution but provides substantial assistance in the

16   marketing or distribution of the product. *Id.* at 776 (articulating the three-part marketing enterprise

17   theory of strict liability). The marketing enterprise theory of liability thus *only* applies if Fulco is

18   outside of the vertical distribution chain. Since Plaintiff has shown a dispute as to whether Fulco is

19   within the vertical distribution chain, the Court need not consider the applicability of *Bay*

20   *Summit's* marketing enterprise theory to the facts of this case.

21        Drawing all reasonable inferences in her favor, Plaintiff has presented enough evidence by

22   which a jury could find that Fulco is a distributor of the Peter K Fitness bands. *See E.piphany, Inc.*

23   *v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1250 ("[T]he non-moving party's

24   specific facts, coupled with disputed background or contextual facts, are such that a reasonable

25   jury might return a verdict for the non-moving party."). The Court cannot find, as a matter of law,

26   that Fulco is not a "distributor" in the vertical chain when Plaintiff has presented evidence that

27   Fulco received, packaged, stored, and shipped the Peter K Fitness band, and engaged directly with

28   Kofitsas in fulfilling orders for the band. As such, summary judgment on the question of strict

United States District Court
Northern District of California

8

1   liability would be inappropriate. *Cf. Anderson*, 477 U.S. 242, 248.

2   **IV.    ORDER**

3         For the foregoing reasons, Fulco's Motion for Summary Judgment is DENIED.

4   Dated: July 18, 2014

5

6         BETH LABSON FREEMAN
        United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

9