UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SONDRA J ALLPHIN,<br><br>            Plaintiff,<br><br>    v.<br><br>PETER K. FITNESS, LLC, et al.,<br><br>            Defendants. | Case No. 13-cv-01338-BLF<br><br>**ORDER GRANTING:**<br>**(1) CROSS-DEFENDANT IDEAL JACOBS (MALAYSIA) CORPORATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION;**<br>**(2) FULCO FULFILLMENT, INC. AND PETER K. FITTNESS, LLC'S REQUESTS TO UNDERTAKE JURISDICTIONAL DISCOVERY**<br><br>[Re: ECF 122] |

This case arises out of a strict products liability claim by Plaintiff, who contends she was injured while using a defective fitness band. Presently before the Court is a motion brought by third-party and cross-claim defendant Ideal Jacobs (Malaysia) Corporation ("IJ Malaysia") to dismiss third-party plaintiff Peter K. Fitness, LLC's Third Amended Third-Party Complaint, and cross-claimant Fulco Fulfillment, Inc.'s ("Fulco") cross-claim, for lack of personal jurisdiction. *See* ECF 122. Peter K. Fitness, ECF 127, and Fulco, ECF 124, have both filed oppositions in which they request the Court grant jurisdictional discovery if the Court finds that they have not made a prima facie showing of personal jurisdiction over IJ Malaysia.

Having reviewed the submissions and oral argument of the parties, as well as the governing case law, the Court GRANTS IJ Malaysia's motion to dismiss, but grants Peter K. Fitness and Fulco leave to amend their respective pleadings. The Court further grants Fulco and Peter K. Fitness the opportunity to conduct limited jurisdictional discovery as outlined herein.

**I.   BACKGROUND**

   **A.   Relevant Procedural History**

Plaintiff filed her Complaint in the Santa Clara Superior Court on February 13, 2013, alleging a single cause of action for strict products liability against Peter K. Fitness, Peter T. Kofitsas, and Fulco. ECF 1-1. Peter K. Fitness and Peter Kofitsas removed the action to this Court on March 25, 2013. ECF 1.

On December 20, 2013, Fulco filed a cross-claim against various parties, including IJ Malaysia, for indemnification and contribution. ECF 58. Soon thereafter, on January 3, 2014, Peter K. Fitness and Peter Kofitsas filed their operative Third Amended Third Party Complaint ("TATPC") against IJ Malaysia, Ideal Jacobs (Xiamen) Corporation, Ideal Jacobs Corporation, and Andrew Conrad Jacobs. ECF 61.

On February 12, 2014, Andrew Conrad Jacobs moved to dismiss the TATPC for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5), on the grounds that he was not a managing or general agent of IJ Malaysia and could not accept service on its behalf. ECF 76. Following briefing, the Court denied Mr. Jacobs' motion. ECF 110.

IJ Malaysia filed the instant motion on September 8, 2014. Fulco and Peter K. Fitness filed separate oppositions on September 22, 2014, and Peter K. Fitness also filed a request for judicial notice. *See* ECF 129. The Court heard oral argument on the motion on December 11, 2014.

   **B.   Factual Background**

      *1.   Allegations In Peter K. Fitness's TATPC*

Peter K. Fitness alleges that IJ Malaysia is a limited-share public company incorporated in Malaysia, and "an investment holding company for Third-Party Defendant Ideal Jacobs (Xiamen)." TATPC ¶ 17 (capitalization omitted). The TATPC includes a cursory allegation that IJ Malaysia is subject to personal jurisdiction in California by virtue of doing business in California or committing a tortious act in California. *Id.* at ¶ 22. The TATPC alleges that IJ Malaysia designed, constructed, and sold the Peter K. Fitness Resistance Band, *see id.* at ¶¶ 32-34, which is the product Plaintiff alleges was defective and caused her injury. The TATPC also alleges that Andrew Jacobs is the Non-Executive Chairman of IJ Malaysia and is "instrumental in developing

2

the strategic direction" of the company and its subsidiaries "including [making] decisions regarding marketing, sales and finance," *id.* at ¶ 24, and that Jacobs conducted business in California. *Id.* at ¶ 25.

### 2. *Allegations in Fulco's Cross-Claim*

Fulco alleges that IJ Malaysia is a subsidiary of Ideal Jacobs Corporation, *see* Cross-Claim, ECF 58 ¶ 19, and is a foreign corporation authorized to do business in California, *id.* at ¶ 21. Fulco's Cross-Claim similarly includes a cursory allegation that IJ Malaysia is subject to personal jurisdiction in California. *Id.* at ¶ 22. Fulco also alleges that Ideal Jacobs (Xiamen) is a wholly-owned subsidiary of IJ Malaysia, *id.* at ¶ 23, and that IJ Malaysia is engaged in a joint venture with the other cross-claim defendants. *See id.* at ¶ 27 ("Peter K. Fitness, Kofitsas, Jacobs, Ideal Jacobs, Ideal Jacobs Xiamen, Ideal Jacobs Malaysia, and each of them, were the agents, employer, employees, joint venturers, partners, and/or associates of each other.") Like Peter K. Fitness, Fulco alleges that IJ Malaysia designed, constructed, fabricated, or otherwise manufactured the Peter K. Fitness Resistance Band, and that IJ Malaysia is "in the chain of commerce" of the Fitness Band. *Id.* at ¶¶ 31-32.

### 3. *Facts Alleged by IJ Malaysia in its Motion*

IJ Malaysia contends that it is neither subject to general or specific jurisdiction in California.[1] IJ Malaysia argues that it has no contacts whatsoever with either the State of California or the United States. *See* Mot., ECF 122 at 8. It contends that it is "merely a holding company, and its only business is its passive investments in its eight subsidiaries." *Id.* at 9. IJ Malaysia states that it wholly owns Ideal Jacobs Xiamen, *id.* at 10, but that it is not a party to any contractual agreement with Peter K. Fitness or Fulco, and that it had no involvement in the design, construction, fabrication, or sale of the Resistance Band at issue. *Id.* at 9-10.

## II. LEGAL STANDARD

Once a defendant brings a challenge to the court's jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *See, e.g.*, *Schwarzenegger v. Fred*

---

[1] Neither Peter K. Fitness nor Fulco argues that IJ Malaysia is subject to general personal jurisdiction in California.

*Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004); *see also Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (stating that a plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction").

When, as is the case here, the Motion is based on written materials and not an evidentiary hearing, the non-moving parties "need only make a prima facie showing of jurisdictional facts." *Schwarzenegger*, 374 F.3d 797, 800. "Uncontroverted allegations in the complaint must be taken as true," *id.*, but a non-movant cannot "simply rest on the bare allegations of its complaint." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Conflicts between facts contained within declarations or affidavits are resolved in the non-movant's favor. *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 861–62 (9th Cir. 2003).

In the absence of a specific statutory provision conferring jurisdiction, federal courts apply the personal jurisdiction laws of the state in which they sit. California's long-arm jurisdictional statute is "coextensive with federal due process requirements." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). In order for the Court to exercise jurisdiction, a defendant must have sufficient "minimum contacts" with the forum state, such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Jurisdiction can be either general, where a party can be haled into that state's court for any reason, or specific, which permits a court to exercise jurisdiction over a defendant only with regard to a particular activity, transaction, or dispute. *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984).

**III.  DISCUSSION**

    **A.  Request for Judicial Notice**

Peter K. Fitness asks the Court to take judicial notice of twelve documents, all of which are printouts from various websites: five screenshots of pages on IJ Malaysia's website (Lompa Decl. Exhs. G-K); four printouts from Ideal Jacobs Corporation's main website (*id.* Exhs. L-O); and three screenshots of webpages from companies Peter K. Fitness alleges Ideal Jacobs has done business with: Alcatel-Lucent, Samina-SCI, and Flextronics (*id.* Exhs. Q-S). *See* ECF 129.

Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of

4

adjudicative facts "not subject to reasonable dispute," and which are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986). IJ Malaysia did not file an objection to the request for judicial notice.

Courts have taken judicial notice of the websites of parties to the litigation when determining personal jurisdiction. *See W. Marine, Inc. v. Watercraft Superstore, Inc.*, 2012 WL 479677, at *9 (N.D. Cal. Feb. 14, 2012) (compiling cases). The Court therefore takes judicial notice of the screenshots from IJ Malaysia's website, exhibits G through K, and the screenshots of Ideal Jacobs Corporation's website, exhibits L through O. *See O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) (taking judicial notice of materials included on the website of a defendant because those materials were created by the defendant and should therefore not be subject to dispute by the defendant).

Further, "it is not uncommon for courts to take judicial notice of factual information found on the world wide web." *Id.* (compiling cases). The Court thus takes judicial notice of the "location" webpages in exhibits Q through S, as those facts are not subject to dispute by the parties and it can be presumed that a company, when placing information about its locations on a website, will do so accurately. *See id.* (citing *Grimes v. Navigant Consulting, Inc.*, 185 F. Supp. 2d 906, 913 (N.D. Ill. 2002)).

**B. Specific Jurisdiction**

The Ninth Circuit Court of Appeals, in *Schwarzenegger*, established a three-prong test for determining whether a non-resident defendant is subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one that arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d 797, 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.1987)).

When a case sounds in tort, as this one does, the Court is concerned with whether the IJ

1 Malaysia has "purposefully directed" its activities at the forum state. This is distinct from the
2 analysis for cases sounding in contract, where courts look to "purposeful availment." *Id.* at 802–
3 04. The parties requesting the Court exercise jurisdiction bear the burden of proof with regard to
4 the first two elements. *See, e.g.*, *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990). If they
5 satisfy their burden as to the first two elements, the burden then shifts to IJ Malaysia to "present a
6 compelling case" that exercising jurisdiction would be unreasonable. *See, e.g.*, *Burger King Corp.*
7 *v. Rudzewicz*, 471 U.S. 462, 476 (1985).

8    Fulco and Peter K. Fitness make several arguments in an attempt to show that IJ Malaysia
9 has met the purposeful direction prong.

10   Fulco argues that IJ Malaysia is a part of a joint venture with Ideal Jacobs Corporation US,
11 and has sufficient contacts with California as a result of that joint venture relationship. Fulco Opp.
12 at 5. Fulco asks for discovery on the question of whether IJ Malaysia is a part of a joint venture
13 relationship with any of the other Ideal Jacobs companies, if the Court finds that Fulco has not
14 made a prima facie showing of personal jurisdiction.

15   Peter K. Fitness argues that Andrew Jacobs is an agent of IJ Malaysia, and that his
16 conduct, and minimum contacts with California, can be imputed to IJ Malaysia for purposes of
17 personal jurisdiction in this suit. *See* Peter K. Fitness Opp. at 8, 12, 14. It also argues that IJ
18 Malaysia is subject to jurisdiction under the representative services doctrine, based on its
19 relationship with Ideal Jacobs Xiamen, its wholly-owned subsidiary. *Id.* at 15. Finally, Peter K.
20 Fitness argues that IJ Malaysia and Ideal Jacobs Xiamen (not Ideal Jacobs US, in contrast with
21 Fulco's argument) are a joint venture, and that Ideal Jacobs Xiamen's contacts, when imputed to IJ
22 Malaysia, subject it to jurisdiction.[2] Peter K. Fitness also seeks jurisdictional discovery on these

---

[2] Peter K. Fitness also makes two arguments with regard to waiver and timeliness of IJ Malaysia's motion, which the Court briefly discusses here. First, it argues that IJ Malaysia waived its opportunity to bring this 12(b)(2) motion by virtue of Andrew Jacobs' prior motion to dismiss for insufficient service of process. Though the goal of Andrew Jacobs' motion was to dismiss IJ Malaysia on account of improper service, IJ Malaysia was not a party to that motion and did not join the motion. This Circuit does not require a defendant to join in a motion brought by a co-defendant, even if the defendant could benefit from that motion. *See Schnabel v. Liu*, 302 F.3d 1023, 1033-34 (9th Cir. 2002). Rule 12(g) only limits further motions by "a party that makes a motion," not a party that could benefit from a motion made by another. Fed. R. Civ. P. 12(g)(2). IJ Malaysia states that it had not retained counsel at the time Jacobs filed his motion, *see* Curry

6

issues. Peter K. Fitness Opp. at 8.

The Court considers the agency, representative services doctrine, and two joint venture arguments below, and finds each unavailing.

*1. Agency*

The contacts of an agent may be imputed to a principal for purposes of personal jurisdiction. *See, e.g.*, *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 419 (9th Cir. 1977)). Peter K. Fitness argues that, since Andrew Jacobs has already been found by this Court to be an agent of IJ Malaysia for purposes of service of process, *see* ECF 110 at 5 ("Taking into account Mr. Jacobs' involvement and prominent title with Ideal Jacobs Malaysia, it is reasonable to consider him an officer or general agent that can accept service of process on behalf of the corporation."), that his contacts with California can be imputed to IJ Malaysia for purposes of jurisdiction.

It is well-settled law that "directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ("Courts generally presume that the directors are wearing their subsidiary hats and not their parent hats when acting for the subsidiary."). In such a circumstance, as the Court is presented here with regard to Andrew Jacobs holding positions with both IJ Malaysia and Ideal Jacobs US, the Court can only consider actions taken by Mr. Jacobs in his capacity as IJ Malaysia's Executive Chairman for purposes of determining jurisdiction. Though both Peter K. Fitness and Fulco provide the Court with evidence that shows that Mr. Jacobs has contacts with California, *see, e.g.*, Lompa Decl. ¶ 15 Exh. P (citing

---

Decl., ECF 130-1, ¶ 5, precluding it from joining the motion or, as Peter K. Fitness argues, "enter[ing] a general appearance" via the Andrew Jacobs motion. *See* Peter K. Fitness Opp. at 5. This is true even though the Jacobs motion would have benefitted IJ Malaysia had it been granted. *See, e.g.*, *Schnable*, 302 F.3d at 1034.

Further, as to timeliness, this Circuit permits the filing of a Rule 12(b) motion "at any time before a responsive pleading is filed," *AETNA Life Ins. v. Alla Med. Servs., Inc.*, 855 F.2d 1470 (9th Cir. 1998) and IJ Malaysia has not filed a responsive pleading to the cross-claim or TATPC. As such, IJ Malaysia's motion is not untimely. *Cf. Auto Indus. Pension Trust Fund v. Ali*, 2012 WL 2911432, at *7 (N.D. Cal. July 16, 2012) ("It is well established that a 12(b) motion is not a 'responsive pleading,' and therefore it need not be filed within the time constraints [outlined in Rule 15(a)(3)].") (internal quotations omitted).

7

1  Mr. Jacobs' deposition testimony in which he testified that he had ongoing business contacts with
2  California companies), neither party provides the Court with evidence that Andrew Jacobs'
3  contacts with California occurred while he was wearing his 'IJ Malaysia' hat, as opposed to his
4  'Ideal Jacobs US' hat. Peter K. Fitness's argument that Andrew Jacobs' activities "ultimately
5  bring profit and business to any one of his several 'locations' which ultimately report to his US
6  company," Peter K. Fitness Opp. at 14, simply disregards the well-settled law that an agent's
7  contacts can only impute jurisdiction when that agent is acting for the company in question.

That Mr. Jacobs has California contacts due to his activities as an owner of Ideal Jacobs US is not sufficient to show jurisdiction over IJ Malaysia, another company with which Mr. Jacobs also has a substantial relationship, unless his contacts occurred while acting on behalf of IJ Malaysia. The parties have not made such a showing, and as such Mr. Jacobs' contacts with California are not imputed to IJ Malaysia.

### 2. *Representative Services Doctrine*

Under California law, the representative services doctrine permits a court to exercise jurisdiction over a foreign company "when the local subsidiary performs a function that is compatible with, and assists the parent in the pursuit of, the parent's own business." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 543 (2000). This means that when "a parent uses a subsidiary to do what it otherwise would have done itself, it purposely availed itself of the privilege of doing business in the forum." *Id.* (citing *Gallagher v. Mazda Motor*, 781 F. Supp. 1079, 1083-84 (E.D. Pa. 1992)).

Peter K. Fitness argues that because Ideal Jacobs Xiamen is a wholly-owned subsidiary of IJ Malaysia, Ideal Jacobs Xiamen's "substantial business contacts" in California subject IJ Malaysia to jurisdiction here as well. *See* Peter K. Fitness Opp. at 15.

Peter K. Fitness's argument is unpersuasive. In *Sonora Diamond*, the Court of Appeal explicitly held that the representative services doctrine does not apply when the parent company is a holding company. *Sonora Diamond*, 83 Cal. App. 4th 523, 545 ("To find the holding company subject to jurisdiction simply because the holding company chose to invest rather than operate [the subsidiary] would swallow the distinction, made in the case law [], bectween holding companies

8

and operating companies, as well as implicitly obliterate the federal constitutional principle . . . that the parent-subsidiary relationship alone *is not a basis for exercising jurisdiction over the parent based on the activities of the subsidiary*.") (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925)) (emphasis added).

Peter K. Fitness brings forth no evidence that IJ Malaysia exercises control over the activities of Ideal Jacobs Xiamen above and beyond its status as Xiamen's parent company. Even if it did, this Circuit has held that a parent company who shares board members with its subsidiary *and* exercises general executive responsibility over the operations of the subsidiary, including review and approval of major policy decisions, is not subject to jurisdiction based on the subsidiary's contacts with the forum. *See Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980). Peter K. Fitness has made a lesser showing of control than was made in *Kramer Motors*. Peter K. Fitness claims that IJ Malaysia's statement it is "only a passive investor in [Ideal Jacobs Xiamen] . . . is widely contradicted by the information available on the Internet," but cites no *specific* information from the Internet to prove this claim.

In contrast, some of the evidence provided by Peter K. Fitness buttresses IJ Malaysia's argument that it is a passive holding company, including public statements made on its website that the company is "an investment holding company with overseas and Malaysia subsidiaries," Req. for Jud. Notice, ECF 129-3 Exh. G, and is "principally engaged in investment holding," *id.* Exh. L. Fulco further provides the Court with statements from IJ Malaysia's website that "the principal business activity of Ideal Jacobs [Malaysia] is investment holding," which includes a chart documenting its various subsidiaries, including Xiamen. Waughtel Decl., ECF 125 Exh. C. Both parties have failed to make the requisite evidentiary showing that IJ Malaysia is anything more than a passive holding company, and as such the representative services doctrine does not provide an avenue for them to establish personal jurisdiction over IJ Malaysia based on Ideal Jacobs Xiamen's contacts with California.

### 3. Joint Venture

Under California law, a joint venture is "defined as an undertaking by two or more persons, or entities, jointly to carry out a single business enterprise for profit." *Ramirez v. Long*

9

*Beach Unified Sch. Dist.*, 105 Cal. App. 4th 182, 193 (2002) (citing *580 Folsom Assocs. V. Prometheus Dev. Co.*, 223 Cal. App. 3d 1, 15 (1990)). This requires that the parties have "(1) a joint interest in a common business, (2) an understanding that profits and losses will be shared, and (3) a right to joint control." *Id.* (citing *Connor v. Great W. Sav. & Loan Ass'n*, 69 Cal. 2d 850, 863 (1968)).

Both Peter K. Fitness and Fulco contend that IJ Malaysia is subject to personal jurisdiction in California by virtue of its status as a joint venture with other Ideal Jacobs entities: Fulco argues that the Ideal Jacobs corporations are one "global joint venture," *see* Fulco Opp. at 2, while Peter K. Fitness claims only that IJ Malaysia is engaged in a joint venture with Ideal Jacobs Xiamen. *See* Peter K. Fitness Opp. at 15-16.

Both Peter K. Fitness and Fulco repeatedly state that the contacts of one party to a joint venture are attributed to the other parties for purposes of personal jurisdiction. *See, e.g.*, Fulco Opp. at 8 ("[W]hen the activities of one co-venturer in the forum are sufficient to sustain the exercise of personal jurisdiction, jurisdiction will attach as to all of the participants in the venture."); Peter K. Fitness Opp. at 16 ("As a joint venture, [Xiamen's] contacts are attributed to IJ [Malaysia].").

Neither party cites in their papers a single California or Ninth Circuit case in support of this proposition, though Fulco cites a number of out-of-district cases in which courts have explicitly held that parties involved in a *written* joint venture agreement are subject to personal jurisdiction in a forum so long as signatory to the joint venture agreement can be haled into that forum. *See* Fulco Opp. at 8 (citing cases from the first and second circuits, as well as district courts in New York, Illinois, and the District of Columbia).

In its Reply, IJ Malaysia argues that this Circuit's governing case law precludes a finding of personal jurisdiction based solely on a party's purported status as a member of a joint venture. For this argument, it cites *Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990), which held in a case involving joint and several liability of a partnership that:

> Liability and jurisdiction are independent. Liability depends on the relationship between the plaintiff and the defendants and between the individual defendants; jurisdiction depends only upon each

10

> defendant's relationship with the forum. *Regardless of their joint liability, jurisdiction over each defendant must be established individually.*

*Id.* at 1365 (emphasis added).

A joint venture, however, is distinct from the circumstances outlined in *Sher*, in which the Court held that the fact the court had jurisdiction over a partnership did not mean that the court necessarily had jurisdiction over the individual partners. It found, consistent with *Rush v. Savchuk*, 444 U.S. 320, 331-32, that personal jurisdiction must be met as to each defendant, and that the mere fact that a party may be liable did not give rise to jurisdiction over that party in the forum. Here, unlike in *Sher*, IJ Malaysia is not "independent for jurisdictional purposes" from its purported co-joint venturers. *Sher*, 911 F.2d 1357, 1365. The allegation is that IJ Malaysia is engaged in a joint venture, with either IJ Xiamen or the Ideal Jacobs Corporation as a whole, and that the members of that purported joint venture are acting in concert, or venturing jointly. Though the Court must find that IJ Malaysia has established contacts with the forum and is not simply being haled into California court based on the *unilateral* actions of a third party, *see Walden v. Fiore*, 134 U.S. 1115, 1125 (2014), a finding that IJ Malaysia was engaged in a joint venture with another entity, and that the other entity engaged in actions *in furtherance of the joint venture* that purposefully availed it of California as a forum, would permit the Court, consistent with due process, to exercise jurisdiction over IJ Malaysia. *Cf., e.g.*, *No. Natural Gas Co. v. Superior Court*, 64 Cal. App. 3d 983, 995 (1976) (finding a party in fraud action subject to jurisdiction in California "because there was evidence [that it] . . . was a member of a joint venture which was engaged in business in California").

Though IJ Malaysia fails to show that, as a matter of law, it cannot be subject to personal jurisdiction based on the actions of a joint venturer in furtherance of the joint venture, the Court is persuaded that neither Fulco nor Peter K. Fitness have made a sufficient showing that IJ Malaysia was engaged in a joint venture with any of the other Ideal Jacobs entities for purposes of selling the Resistance Band.

Fulco's argument relies on the fact that Ben Meng and Andrew Jacobs have roles in both Ideal Jacobs US and IJ Malaysia, and that IJ Malaysia "markets itself as a purveyor of the same

11

products as and along with" Ideal Jacobs US and Ideal Jacobs Xiamen. Fulco Opp. at 7. Though Fulco provides the Court with screenshots of IJ Malaysia's webpage which state that IJ Malaysia "produces a variety of labelling solutions and injection molded telecom parts," Waughtel Decl. Exh. G, this evidence does not show that IJ Malaysia is part of any joint venture with any other Ideal Jacobs company, let alone a joint venture with regard to the production of the Resistance Band.

Peter K. Fitness similarly relies on Mr. Jacobs' "large executive role" in both IJ Malaysia and Ideal Jacobs Xiamen, and asks the Court to infer that his "level of control" over the myriad Ideal Jacobs companies shows that, in this circumstance, IJ Malaysia is involved in a joint venture with Ideal Jacobs Xiamen. *See* Peter K. Fitness Opp. at 15-16.  Peter K. Fitness fails to cite a single piece of evidence in its argument that IJ Malaysia and Ideal Jacobs Xiamen are engaged in a joint venture. *See id.* Its evidence presented in its request for judicial notice does show that Andrew Jacobs holds executive roles in both these companies, but provides no support for its joint venture argument with regard to Ideal Jacobs Xiamen. *Cf., e.g.*, *Bestfoods*, 524 U.S. 51, 69.

Neither party has presented evidence to rebut IJ Malaysia's evidence that it is a passive holding company and is not engaged in a joint venture with any of the other Ideal Jacobs companies. *See* Chen Decl., ECF 122-1 ¶¶ 7, 8, 10.

### C. Jurisdictional Discovery

Both Fulco and Peter K. Fitness ask the Court to permit jurisdictional discovery if the Court grants IJ Malaysia's motion. *See* Fulco Opp. at 8; *see also* Peter K. Fitness Opp. at 8 (describing two attempts to obtain discovery as to IJ Malaysia's contention that the Court lacks personal jurisdiction, which it argues were ignored). Neither party in its Opposition outlined a jurisdictional discovery plan. The Court requested the parties be prepared to discuss jurisdictional discovery at the December 11, 2014 hearing. *See* ECF 134.

A district court has broad discretion in granting or denying discovery on the question of personal jurisdiction. *See, e.g.*, *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24; *see also Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). This Circuit has stated that the district court should grant jurisdictional discovery "where pertinent

12

facts bearing on the question of jurisdiction are controverted," *Wells Fargo & Co.*, 556 F.2d 406, 430 n.24, or "where a more satisfactory showing of the facts is necessary." *Grober v. Mako Prods., Inc.*, 2008 WL 9027249, at *8 (C.D. Cal. Aug. 29, 2008). IJ Malaysia asks the Court to deny jurisdictional discovery because the personal jurisdiction claims are "based on unsupported assertions . . . and are contradicted by the sound evidence submitted" by IJ Malaysia. Reply at 15.

The Court agrees with Peter K. Fitness and Fulco that limited jurisdictional discovery would be appropriate in order to determine whether IJ Malaysia is subject to personal jurisdiction in California under an agency, representative service doctrine, or joint venture theory of jurisdiction. The Court will not, however, continue the trial date as requested by Fulco. *See* Fulco Opp. at 9.

**IV.   ORDER**

For the foregoing reasons, the Court HEREBY ORDERS:

1.   IJ Malaysia's motion to dismiss for lack of personal jurisdiction is GRANTED, with leave to amend. Fulco and Peter K. Fitness shall file an amended pleading no later than January 2, 2015.

2.   Fulco and Peter K. Fitness's requests to engage in jurisdictional discovery are GRANTED. The parties shall meet and confer with IJ Malaysia to outline a jurisdictional discovery plan.[3] A stipulation regarding this discovery plan shall be due to the Court no later than December 18, 2014, and the discovery schedule should be expedited in light of the upcoming April 2015 trial in this case.

**IT IS SO ORDERED.**

Dated: December 11, 2014

_____
BETH LABSON FREEMAN
United States District Judge

---

[3] Any and all discovery disputes with regard to jurisdictional discovery should be brought to this Court, and not the referred Magistrate Judge, in the form of a letter brief not to exceed three pages.