UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SONDRA J ALLPHIN,<br><br>Plaintiff,<br><br>v.<br><br>PETER K. FITNESS, LLC, et al.,<br><br>Defendants. | Case No. 13-cv-01338-BLF<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Re: ECF 136] |

This is a strict products liability action brought by Plaintiff against several Defendants, alleging that a defective exercise resistance band unexpectedly broke while she was properly using it, causing her serious injury. Plaintiff has been diagnosed by her treating doctors, resident at Stanford Hospitals and Clinics as well as Palo Alto Medical Foundation ("PAMF"), with Complex Regional Pain Syndrome Type I ("CRPS-I"), which she describes as "a debilitating condition that results in near constant, severe pain that affects a victim's limbs and makes touching or moving those limbs seem intolerable." Mot. at 1. As a result of her injury, Plaintiff contends that she has been unable to return to work as a trusts and estates attorney. *See id.*

Defendants Fulco Fulfillment ("Fulco"), Peter Kofitsas, and Peter K. Fitness have asserted affirmative defenses which allege, among other things, that they are entitled to apportionment of responsibility for non-economic damages, if any are found by the jury, caused by Plaintiff's treating doctors' medical malpractice. Defendants' affirmative defense is premised on their claim that the diagnosis of CRPS-I in Plaintiff, and the treating doctors' corresponding treatment of Plaintiff consistent with that diagnosis, was malpractice. In support of this medical malpractice affirmative defense, Defendants have utilized the testimony and reports of an expert, Dr. Jose Ochoa, who contends that Plaintiff's treating doctors have committed malpractice by "failing to

properly diagnose Plaintiff with a pseudoneurological condition . . . rather than CRPS-I." Opp. at 1. Dr. Ochoa does not believe that CRPS-I is a valid medical diagnosis, despite uniform endorsement of the diagnosis in the pain management community.

Plaintiff now seeks summary adjudication on Defendants' medical malpractice defense, and has framed her motion as to a single issue: "Defendants cannot establish that any of Plaintiff's treating healthcare providers committed medical malpractice by a preponderance of the evidence and as such, there can be no apportionment of damages to these nonparty healthcare providers at trial." *See* ECF 151 at 2. Plaintiff argues that Defendants' evidence, including the testimony and expert reports of Dr. Ochoa, fails to make out a prima facie case for medical malpractice under California law, and as such that these Defendants cannot seek apportionment of harm for Plaintiff's injuries to her treating doctors as joint tortfeasors.[1]

Plaintiff therefore requests that the Court grant partial summary judgment and thus deny Defendants the ability to utilize two jury instructions – CACI 406 regarding "Apportionment of Responsibility" and CACI VF-402 regarding "Negligence – Fault of Plaintiff and Others at Issue" – with regard to any nonparty healthcare provider. *See* Reply at 12.

Having reviewed the briefing and oral argument of the parties, the Court GRANTS Plaintiff's motion, for the reasons set forth below.

**I.     BACKGROUND**

    **A.     Procedural History**

Plaintiff filed suit in Santa Clara County Superior Court against Defendants Peter K. Fitness, Peter Kofitsas, and Fulco Fulfillment on February 13, 2013, alleging a single cause of action for strict products liability.[2] On March 21, 2013, Fulco answered. *See* Fish Decl. Exh. A. On March 25, 2013, Peter K. Fitness and Peter Kofitsas answered, and also removed the case to

---

[1] Plaintiff also asserts that Defendants' discovery responses and Rule 26 disclosures regarding any purported affirmative defense of medical malpractice against her treating doctors were inadequate. *See, e.g.*, Mot. at 9-12. The Court addresses this argument briefly in Part III of this Order, but ultimately finds it unpersuasive.

[2] Defendants have filed various cross-claims and counterclaims against one another and other third-parties, which are not germane to Plaintiff's instant motion.

2

this district. *See* ECF 1, 2; *see also* Fish Decl. Exh. B.

Fulco's sixth and twelfth affirmative defenses are at issue in Plaintiff's motion. *See* Mot. at 9. Fulco's sixth defense contends that Plaintiff's injuries were "negligently caused by persons . . . other than that (sic) this answering defendant," while its twelfth defense contends that Plaintiff's injuries "resulted from an independent, intervening cause over which this answering defendant had no control." *See* Fish Decl. Exh. A.

Similarly, Peter Kofitsas and Peter K. Fitness' fifth, fourteenth, and sixteenth affirmative defenses are challenged by Plaintiff. *See* Mot. at 9-10. Their fifth defense states that Plaintiff's injuries were "caused solely by the actionable conduct of persons, parties or entities other than these answering Defendants." Fish Decl. Exh. B. Their fourteenth defense states that Plaintiff's "injuries and damages, if any, are attributable to acts of third parties." *Id.* Their sixteenth defense states that Plaintiff's injuries were "proximately caused and contributed to by the acts of other defendants, persons, and entities, and said acts were the intervening and superseding causes of injuries and damages, if any." *Id.*

Plaintiff filed the instant motion on December 9, 2014. *See* ECF 136. Fulco, Kofitsas, and Peter K. Fitness jointly opposed. *See* ECF 150. Following briefing, the parties appeared for oral argument on January 15, 2015. *See* ECF 169.

### B. Plaintiff's Undisputed Material Facts

Plaintiff alleges the following material facts in support of her motion, which she submits are undisputed. Plaintiff contends that the evidence and testimony provided by Defendants in support of the medical malpractice diagnosis is insufficient to make out a prima facie case for medical malpractice against Plaintiff's treating doctors under California law.[3]

---

[3] In their joint opposition, Defendants submit two objections to evidence offered by Plaintiff. First, they object to the declaration of Dr. Steven Feinberg on the grounds that Plaintiff did not previously disclose him as an expert on the issue of medical malpractice pursuant to Rule 26. *See* Defs.' Opp. at 8. They further object to the webpages referred to in Exhibits B, C, D, and E of the Feinberg Declaration as hearsay, pursuant to Federal Rule of Evidence 802. *See id.* Plaintiff does not in her Reply substantively respond to either objection. *See generally* Reply.

Having reviewed the subject matter of the Feinberg Declaration, the Court finds that it is not relevant to its determination of the instant motion, therefore, the Court will not consider the Feinberg Declaration or the attached evidence in exhibits B, C, D, and E.

Plaintiff states that all pain management doctors recognize CRPS-I as a valid medical diagnosis, a point she contends Dr. Ochoa concedes. *See* Ochoa Depo., Fish Decl. Exh. F at 46:7-11. Despite this uniform recognition in the pain management community, Plaintiff cites to a number of statements made by Dr. Ochoa in which he describes his belief that CRPS-I is a "mythical diagnosis." *See* Ochoa Depo. 45:18-21. For example, Dr. Ochoa has stated that he believes that CRPS-I is a "purely nonsense diagnosis," *id.* at 44:24-45:1, and that treating someone for CRPS-I amounts to the practice of "false medicine," *id.* at 45:10-12. He describes pain management doctors who believe in CRPS-I as "flat earth people," *id.* at 75:20-76:1, "cult-driven, folk medicine believers," *id.* at 131:3-14, and "pain aficionados," *id.* at 120:23-25, who are "amateurs" and "not professional." Ochoa Depo. 120:23-121:23. Dr. Ochoa further has stated that the doctors who diagnosed Plaintiff with CRPS-I and thereafter treated her pursuant to that diagnosis committed malpractice. *See, e.g.*, *id.* at 129:12-130:9; *see also* ECF 152-5 at 10 (statements regarding only Plaintiff's treating doctors at Stanford). Dr. Ochoa believes that any doctor who diagnoses a patient with CRPS-I is "lost and unaccountable." Ochoa Depo. 123:10-20.

Plaintiff further notes that Dr. Ochoa is not board certified in the United States in pain management, anesthesiology, neurology, psychiatry, or any other medical field. *See, e.g.*, Ochoa Depo. 6:25-7:3, 89:12-15 (in which Dr. Ochoa testifies "I'm not board certified in anything").[4] She cites deposition testimony in which Dr. Ochoa states that he "stay[s] away from the mainstream of pain practicing doctors who don't understand medicine." *Id.* at 121:11-122:2.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The Court draws all reasonable

---

[4] This does not mean Dr. Ochoa lacks relevant medical education and training. On the contrary, Dr. Ochoa himself has three doctorate degrees, including his M.D. from the Catholic University of Chile. *See* Lompa Decl. Exh 10 at 3, 8.

4

inferences in favor of the party against whom summary judgment is sought. *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party "bears the burden of showing there is no material factual dispute," *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In judging evidence at the summary judgment stage, "the Court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513–14 (N.D. Cal. 1995) (citing *T.W. Elec. Serv., Inc.*, 809 F.2d 626, 630).

A material fact is one that could affect the outcome of suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a court to find that a genuine dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for the [non-moving party]." *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009). The court "determines whether the non-moving party's specific facts, coupled with disputed background or contextual facts, are such that a reasonable jury might return a verdict for the non-moving party." *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1250 (N.D. Cal. 2008). If the court finds that a reasonable jury could find for the non-moving party, summary judgment is inappropriate. *See, e.g.*, *Anderson*, 477 U.S. 242, 248.

**III.   DISCUSSION**

Both parties agree that, in order to defeat Plaintiff's summary judgment motion, Defendants must put forth sufficient evidence to establish a prima facie case that Plaintiff's treating physicians have committed medical malpractice. *See* Mot. at 5-8; *see also* Opp. at 1 ("Defendants do not dispute that it (sic) must establish a prima facie case of medical malpractice in order to have Plaintiff's treating physicians included on the verdict form [as joint tortfeasors]."). Defendants state that this prima facie case has been established through the testimony and evidence provided by Dr. Ochoa, through his independent medical examination ("IME") of

1  Plaintiff, his expert reports, and his deposition testimony. *See id.*[5]

2        A claim for medical malpractice against Plaintiff's treating physicians requires Defendants
3  to show four elements: "(1) a duty to use such skill, prudence, and diligence as other members of
4  the profession commonly possess and exercise, (2) a breach of the duty, (3) a proximate causal
5  connection between the negligent conduct and the injury, and (4) resulting loss or damage."
6  *Chakalis v. Elevator Solutions, Inc.*, 205 Cal. App. 4th 1557, 1571 (2012) (citing *Johnson v.*
7  *Superior Court*, 143 Cal. App. 4th 297, 305 (2006)); *see also Wilson v. Ritto*, 105 Cal. App. 4th
8  361 (2003). Where, as here, Defendants seek to reduce their liability by apportioning fault to a
9  nonparty joint tortfeasor who is a treating physician, the Defendants must show "substantial
10 evidence" that the physician is also at fault. *See Wilson*, 105 Cal. App. 4th 361, 367, 369
11 ("Apportionment among doctors under Civil Code section 1431.2 requires evidence of medical
12 malpractice . . . as to nonparty doctors. The same burden of proving fault applies regardless of
13 whether a joint tortfeasor is a defendant or nonparty."). For purposes of establishing breach of
14 duty in a medical malpractice case, the moving party must show that the physician's performance
15 fell before the "care ordinarily possessed and exercised by members of the medical profession
16 *under similar circumstances*." *Avivi v. Centro Medico Urgente Med. Cntr.*, 159 Cal. App. 4th 463,
17 470 (2008) (citing *Mann v. Cracchiolo*, 38 Cal.3d 18, 36 (1985)) (emphasis in original). Case law
18 is clear that specialists are "held to the standard of learning and skill normally *possessed by such*
19 *specialists*." *Quintal v. Laurel Grove Hosp.*, 62 Cal.2d 154, 159-60 (1964) (emphasis added).

20       Plaintiff focuses on three arguments regarding the insufficiency of Defendants' evidence in
21 stating a prima facie case for medical malpractice. *See* Mot. at 12-20. First, she argues that

---

[5] Defendants clearly state in their joint opposition that their prima facie case of medical malpractice "would be accomplished by way of the testimony of Jose L. Ochoa [], the expert retained by defendants." Opp. at 1. Nonetheless, Defendants also cite as evidence a report and letter by Dr. Mark Strassberg, a board certified neurologist and psychiatrist, in support of their opposition. *See* ECF 152-1 Exh. 2 (Dr. Strassberg report); ECF 152-5 Exh. 7 (Dr. Strassberg letter). Dr. Strassberg's report, however, states that he "[a]ccept[s] Dr. Ochoa's conclusions [as to Plaintiff's diagnosis] as correct," because Dr. Ochoa is "an expert in the field of CRPS." ECF 152-1 Exh. 2 at 33. Dr. Strassberg himself does not provide *any* evidence as to the standard of care that Plaintiff's physicians should have exercised, in this report or his letter. *See* ECF 152-5 Exh. 8 at 1 (merely stating that "[a]s noted in my prior report, Dr. Ochoa found no physical/neurologic disturbance in this woman to explain her complaints").

1  Defendants have not specifically shown how Plaintiff's treating physicians breached the relevant
2  medical standard of care. Second, she argues that, even if this breach were shown, Defendants
3  have not established that the physicians' actions were a substantial factor in causing Plaintiff
4  harm. Third, she argues that Dr. Ochoa's opinions are insufficient as a matter of law to establish a
5  triable issue of fact as to any alleged medical malpractice, because they are not credible or reliable
6  under Federal Rule of Evidence 702.

7  In response, Defendants contend that, reading Dr. Ochoa's testimony and expert reports in
8  their entirety, he sets forth enough evidence to make a prima facie case for medical malpractice –
9  arguing that, even if Dr. Ochoa did not use the specific phrases "medical standard of care" or
10 "substantial factor," he still set forth enough information such that, making all inferences in favor
11 of Defendants, his testimony amounts to a prima facie case for malpractice. Additionally, though
12 they concede that Dr. Ochoa falls outside the mainstream in believing that CRPS-I is a mythical
13 diagnosis, Defendants argue that his opinions are nonetheless reliable under FRE 702. Finally,
14 they argue that any issue of bias with regard to Dr. Ochoa's belief that CRPS-I is an invalid
15 diagnosis is properly addressed through cross-examination.

16 The Court reviews the entirety of Dr. Ochoa's deposition testimony, his IME of Plaintiff,
17 and his expert reports in order to determine whether Defendants have demonstrated a prima facie
18 case for medical malpractice. Defendants are undoubtedly correct that there is no requirement an
19 expert use certain "magic words" in his opinions in order to provide sufficient evidence to show
20 malpractice. For example, an expert does not need to specifically say the words "medical standard
21 of care" if he clearly, and specifically, describes what care a doctor, operating under similar
22 circumstances as the plaintiff's treating physicians, would have exercised in treating a similarly
23 situated plaintiff. *Cf. Wilson*, 105 Cal. App. 4th 361, 369 ("Defendant [is] required to establish
24 [that the doctors were] at fault, and fault is measured by the medical standard of care."). The
25 ultimate problem that Defendants cannot overcome in this case is not the failure of Dr. Ochoa to
26 use specific words in support of his opinion regarding medical malpractice, it is his failure to set
27 forth sufficient evidence to support that claim for medical malpractice against Plaintiff's treating
28

7

physicians.[6]

Based on the Court's consideration of all of Dr. Ochoa's reports and testimony, his opinion regarding whether Plaintiff's treating doctors committed medical malpractice lacks foundation. First and foremost, Dr. Ochoa never identifies or defines the proper standard of care that Plaintiff's doctors should have exercised. Instead, he asserts that the mere diagnosis of CRPS-I in Plaintiff by her treating doctors constitutes malpractice. Dr. Ochoa does not believe that CRPS-I is a valid medical diagnosis. *See, e.g.*, Ochoa Depo. 45:7-12 (stating that "[p]erforming as a professional doctor and supporting the concept of CRPS-I really is ignorant" and answering "yes" to the question "Would you say that treating someone for CRPS type I is practicing false medicine?"). However, he concedes that CRPS-I is recognized as a valid diagnosis by *all* pain management doctors. *See id.* at 46:6-11 (responding to the question "There are, correct, many medical books and other literature that do recognize CRPS type I as a valid diagnosis, correct?" with "The majority, I mean, *all pain management doctors, all of them*.") (emphasis added). Further, he concedes that that National Institute of Neurological Disorders and Stroke ("NINDS"), a division of the National Institute of Health, recognizes the validity of a CRPS-I diagnosis. *See id.* at 53:9-56:14 (describing as "pathetic" a fact sheet put out by NINDS describing CRPS-I, though recognizing that NINDS is "one of the world's foremost medical research centers"). In his IME of Plaintiff, he states clearly that "CRPS (1) [] is *unanimously accepted as a neurological symptomatic condition*," but states unequivocally that he believes CRPS-I "does not amount to a valid medical diagnosis." *See* Ochoa IME, ECF 152-1 Exh. 1 at 5 (emphasis added).

Dr. Ochoa essentially argues that any pain management doctor who diagnoses any patient with CRPS-I is *per se* committing malpractice. *See id.* at 10-11 (stating that, in diagnosing

---

[6] Plaintiff's arguments that Defendants did not properly disclose Dr. Ochoa's testimony, and that Defendants failed to provide sufficient discovery responses regarding their affirmative defenses, *see* Mot. at 5-9, are unpersuasive. Dr. Ochoa's review of Dr. Feinberg's IME, produced to Plaintiff more than a month prior to the November 13, 2014 expert discovery cut-off, clearly indicates that Dr. Ochoa believed Plaintiff's treating physicians at Stanford committed malpractice. *See* ECF 152-5 Exh. 9 at 10. Plaintiff had the opportunity to depose Dr. Ochoa regarding his malpractice allegations. *See* Fish Decl. Exh. F. Though the evidence and testimony provided by Dr. Ochoa failed to set forth a prima facie case for malpractice, Defendants' disclosures with regard to Dr. Ochoa's testimony were not inadequate.

1   Plaintiff with CRPS-I, Plaintiff's treating physicians "trespassed their legitimate professional
2   qualifications," and that "those providers unintentionally harmed the patient iatrogenically"
3   because of that diagnosis). Dr. Ochoa does not argue that Plaintiff was misdiagnosed with CRPS-I
4   because she does not show the proper symptoms of CRPS-I. Rather, he states that Plaintiff was
5   misdiagnosed with CRPS-I, a diagnosis he concedes all pain management doctors recognize,
6   because he believes CRPS-I does not exist. *See id.* at 4-10. Dr. Ochoa seems to go even further in
7   his IME, calling into question the *entire* medical specialty of pain management. *See id.* at 10
8   ("These flawed standards of practice of 'pain management' has (sic) been well recognized and
9   powerfully challenged through scientific evidence," to which he cites an article that he himself
10  wrote).

11  Even making every inference in favor of Defendants, the Court finds that Dr. Ochoa fails
12  to identify the standard of care that these treating physicians should have exercised, and thus
13  Defendants offer no evidence of breach of their duty of care. At most, Dr. Ochoa critiques the
14  treating physicians' ultimate diagnosis, and states that Plaintiff should have received an alternative
15  diagnosis. He states that Ms. Allphin's symptoms "reflect[] psychoneurological dysfunction," *id.*
16  at 10, and that she should instead have received "[p]sychiatric therapies" in order to treat her
17  condition, *id.* at 12. Though a differential diagnosis can be used in this circuit by an expert to prove
18  causation in a medical malpractice case, *see, e.g.*, *Clausen v. M/V New Carissa*, 339 F.3d 1049,
19  1058 (9th Cir. 2003), it is not sufficient by itself to show that a physician fell below the relevant
20  standard of care, particularly when the expert explicitly recognizes that all doctors within the
21  specialty in question recognize the validity of the diagnosis the patient ultimately received from
22  her treating doctors. *See* Ochoa Depo. 46:6-11.

23  The dearth of Defendants' evidence regarding the relevant standard of care was made even
24  clearer by the attorneys for Defendants at the January 15, 2015 hearing on the instant motion. In
25  response to the Court's statement that Dr. Ochoa "doesn't define the standard of care . . . there's
26  no foundation for his malpractice assertions," counsel stated that "I think it was clear [Dr. Ochoa]
27  was critical of [the treatment], . . . they just went to CRPS without considering other diagnos[es],
28  didn't have her examined by mental health practitioners, didn't do the [right] type of neurological

exam." ECF 169 at 10-11. Much like Dr. Ochoa, counsel for Defendants was unable to explicate exactly *what* Plaintiff's treating physicians should have done, apart from the cursory statement that the treating physicians did not "do the [right] type of neurological exam." *Id.* at 11. Dr. Ochoa's IME, however, clearly concedes that Plaintiff was provided with neurological examinations. *See* ECF 152-1 Exh. A at 9 (where he states that Plaintiff's "occasional neurological exams by her appointed providers were shallow and incomplete"). Even giving Dr. Ochoa's testimony the benefit of all doubts, his statement is factually devoid. He does not articulate what other types of neurological exams Plaintiff should have received above and beyond those she was given by her treating doctors, nor does he explain any defects in the exams performed.

Without a description of the appropriate standard of care, Dr. Ochoa's purported medical malpractice claims lack any relevant context. Dr. Ochoa clearly believes that CRPS-I is not a valid diagnosis. He has expressed this opinion in courts and tribunals across the United States. *See, e.g.*, *Claimant v. Employer & Liberty Mut. Fire Ins. Co.*, 2003 WL 1092570 (2003 Idaho Indus. Comm.); *Vaughn v. Envir. Health Sciences Alaska, Inc.*, 2004 WL 1294502, at *17 (2004 Alaska Work. Comp. Bd.) (in which the Board found Dr. Ochoa "not credible" and "assesse[d] no weight to Dr. Ochoa's testimony"); *see also Aponte v. Weitz Co.*, 2002 WL 34453158 (S.D. Fla. Apr. 1, 2002) (where a court found that Dr. Ochoa met the *Daubert* threshold to testify as an expert, but had not been provided with a copy of his expert report). But this belief, by itself, is not sufficient to bring an affirmative case for medical malpractice against Plaintiff's treating doctors.

Defendants contend that the Court should not preclude Dr. Ochoa's testimony at summary judgment because any question of his "bias[] against CRPS-1 . . . is properly addressed during cross-examination to discredit his testimony." Opp. at 9. Plaintiff is correct, however, that there is "a clear and substantial difference between having an expert criticize a plaintiff's nonparty healthcare providers at trial and having an expert prove a prima facie case of malpractice against a nonparty healthcare provider." Reply at 2.

The Court does not exclude Dr. Ochoa's testimony under the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993), but rather excludes his opinions as to medical malpractice more narrowly under Federal Rule of Evidence 702(b). As discussed in

detail above, Dr. Ochoa's opinions on this ultimate issue are based on nothing more than his opinion that CRPS-I is a "mythical diagnosis."[7] Defendants cannot attempt at trial to apportion comparative fault to Plaintiff's treating, nonparty physicians without first making out at least a prima facie case for medical malpractice. *See Wilson*, 105 Cal. App. 4th 361, 369. They have not done so. In *Wilson*, the Court declined to allow a defendant to apportion fault to a nonparty treating physician because "evidence merely showing that [the physician's] treatment affected plaintiff's condition was not sufficient to add [the physician] as a joint tortfeasor. Defendant was required to establish [that the physician] was at fault, and fault is measured by the medical standard of care." *Id.* Here, Defendants fail to set forth a prima facie case for medical malpractice because they fail to produce evidence that defines the relevant standard of care, and cannot show that Plaintiff's treating physicians fell below the standard of care that similar practitioners in their specialty would have exercised. *See Quintal*, 62 Cal.2d 154, 159-60.

In sum, Dr. Ochoa's opinion that he would have diagnosed Plaintiff differently is not sufficient, standing alone, to support a prima facie showing of medical malpractice. Coupled with his flamboyant personal views regarding the integrity of the pain management medical community, his reliance on his own publications and little more to support his unorthodox and admittedly outside-the-mainstream view that a CPRS-I diagnosis constitutes *per se* medical malpractice is simply not enough to allow Defendants' medical malpractice claim to survive.

Though Defendants' failure to show these two elements of a medical malpractice claim – the relevant medical standard of care and breach of that standard – is fatal to Defendants' attempt to prove an affirmative case of medical malpractice, Plaintiff makes one additional argument that the Court briefly addresses here: Plaintiff contends that Defendants also fail to put forth sufficient evidence to show causation, as required under *Chakalis*. *See* 205 Cal. App. 4th 1557, 1571-72 (extending the holding of *Wilson* to all four elements of a medical malpractice claim, not merely breach of duty).

---

[7] Whether Dr. Ochoa will be permitted at trial to testify more generally that CRPS-I is a false or mythical diagnosis will be deferred to the pre-trial hearing, where the Court can consider the reliability of his opinions under *Daubert*. At this juncture, the Court is simply considering whether Defendants have made a prima facie showing of medical malpractice.

11

In support of its causation argument, Plaintiff contends that Defendants have not "proven [causation] within a reasonable medical probability based on competent expert testimony." 205 Cal. App. 4th 1557, 1572 (citing, among others, *Miranda v. Bomel Constr. Co, Inc.*, 187 Cal. App. 4th 1326, 1336 (2010)) (emphasis added). In *Chakalis*, a jury had been presented with evidence that certain therapies and treatments prescribed by the plaintiff's treating physician were "unnecessary and painful," that "plaintiff feared the therapy," that the physician's "diagnosis was incorrect," and that "many of plaintiff's health problems had a very strong psychiatric basis to them." *Id.* The Court found this evidence insufficient, stating:

> The fatal flaw with defendants' argument is that there was no expert testimony regarding the element of causation. While defendants' experts were critical of [the doctor's] treatment and discussed the dangers and risks associated with it, they did not actually offer an expert opinion that *it was a substantial factor in causing plaintiff's injuries* within a reasonable medical probability. Defendants therefore failed to meet their burden.

*Id.* at 1572-73 (emphasis added).

Plaintiff argues that this case and *Chakalis* are virtually indistinguishable, because Dr. Ochoa did not "offer an expert opinion in his reports that said mistreatment [by Plaintiff's doctors] was a substantial factor in causing Plaintiff's injuries within a reasonable degree of probability." Reply at 4. Defendants, in response, point to expert reports and deposition testimony in which Dr. Ochoa states that he believes Plaintiff's treating doctors committed malpractice. *See* Opp. at 3-4 ("[T]he Stanford Pain faculty working on Sondra Allphin have caused iatrogenic harm [] by commission and [] by omission."); *id.* at 4 ("[Plaintiff's doctors] have committed iatrogenic harm. . . . [T]hey have trespassed a specialty. . . . [T]hey have misdiagnosed the patient. Through the misdiagnosis, they have given her the wrong treatment, so they have harmed her iatrogenically.").

Plaintiff's arguments regarding causation are ultimately unpersuasive. First, Dr. Ochoa does state that Plaintiff's treating physicians caused her harm, through their diagnosis of CRPS-I and their subsequent treatment of Plaintiff consistent with that diagnosis. *See* ECF 152-5, Exh. 9 at 10; *see also* Lompa Decl. Exh. 1 at 10 (stating that the physicians "harmed the patient iatrogenically" through the use of four "ineffective, invasive, potentially dangerous treatments," including sympathetic blocks and Ketamine infusions). In *Chakalis*, which was decided following

12

a jury trial and not, as is the case here, at summary judgment, the Court found that there was "no expert testimony regarding the element of causation" for the plaintiff's nonparty treating physician, and thus held that Defendants had failed to meet their burden to prove comparative fault. 205 Cal. App. 4th at 1572. Here, Defendants do present some such evidence regarding causation. Drawing all inferences in favor of Defendants, Dr. Ochoa's expert reports and testimony suffice, at summary judgment, to make a prima facie case that the treatment regimen of Plaintiff's treating physicians caused her harm.

Much as a court would be required to grant summary judgment for defendant if a plaintiff failed to set forth a prima facie case for medical malpractice, *cf., e.g.*, *Avivi*, 159 Cal. App. 4th 463 (2008), the Court similarly must hold a defendant to that same standard when attempting to prove an affirmative defense of medical malpractice against a patient's nonparty physicians. *See, e.g.*, *Perez v. Gordon & Wong Law Grp., P.C.*, 2012 WL 1029425, at *7 (N.D. Cal. Mar. 26, 2012) (noting that the defendant bears the same burdens in proving an affirmative defense that a plaintiff bears in proving a claim for relief) (citing *Kanne v. Conn. Gen. Life. Ins. Co.*, 867 F.2d 489, 492 n.4 (1998)). Even after the Court pieced together the statements made by Dr. Ochoa in all of his various reports, testimony, and his IME of Plaintiff, it finds that Dr. Ochoa fails to adequately set forth the relevant standard of care or show how the performance of Plaintiff's physicians fell below that standard. He thus fails to make out a prima facie case for medical malpractice.

## IV.  ORDER

For the foregoing reasons, Plaintiff's motion for partial summary judgment is GRANTED. Defendants shall not be permitted to instruct the jury as to "CACI 406: Apportionment of Responsibility" and shall not be given "CACI VF-402: Negligence – Fault of Plaintiff and Others at issue" regarding any nonparty health provider.

**IT IS SO ORDERED.**

Dated: January 28, 2015

_____
BETH LABSON FREEMAN
United States District Judge